**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-CR-20018 WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

TENZIN ORGIL,

    Defendant.

Hearing Date: 2/13/2023
Time: 3 p.m.

FILED BY ___ D.C.
FEB 07 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

_____/

## DEFENDANT TENZIN ORGIL'S OPPOSITION TO GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER

### 1. INTRODUCTION

The government seeks review of the pretrial release order issued by the Central District of California, Magistrate Judge Douglas McCormick, presiding.

Defendant TENZIN ORGIL hereby opposes the government's motion.

This opposition is made upon the grounds that the evidence demonstrates that there exists a combination of conditions that reasonably assures defendant's presence at trial and the safety of the community.

The opposition is based upon the provisions of the Bail Reform Act of 1984 and upon the evidence adduced at the hearing before the magistrate, as well as the annexed brief, all documents, and pleadings on file in this action and any other oral and/or documentary evidence and arguments as may be adduced at a hearing on the motion.

At that hearing, Judge McCormick reviewed the government's proffer including the indictment, the Pretrial Services Reports (Government's Attachment 1), the arrest

1

warrant, the search warrant and search warrant affidavit[1], all of which contained much of the same information now before this court.

The government's focus at that hearing – as it is here - was the weight of the evidence that supported the allegations against Mr. Orgil as set forth in the indictment.

Judge McCormick's conclusion that there exists a combination of conditions that can reasonably assure defendant's appearance at trial and the safety of the community was a considered and reasoned release order guided by the legal principles that govern under the Bail Reform Act of 1984.

In its memorandum in support before this court, the government regurgitates the arguments made before the magistrate judge despite the lack of evidence to support its proffer, as demonstrated below. Furthermore, the government's weight of the evidence focus is misguided.

It also attempts to provide additional evidence, although this court has not requested it, in obvious disregard for the principles of *de novo* review applicable to this hearing.

The government misunderstands and misapplies the presumption in 18 U.S.C. § 3142(g) and also fails to carry its burden of persuasion that "no combination of conditions can reasonably assure the defendant's appearance at trial and the safety to the community."

## 2. STATEMENT OF THE CASE

Defendant TENZIN ORGIL is charged by indictment on five counts with conspiracy to distribute fentanyl and conspiracy to distribute methamphetamine of 21 U.S.C § 846, possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1),

---

[1] Magistrate Judge McCormick also issued the search warrant for defendant's home on January 17, 2023.

2

(b)(1)(C), possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and conspiracy to commit concealment money laundering in violation of 18 U.S.C. § 1956(h), (a)(1)(B)(i).

The indictment was returned on January 17, 2023, and charges defendant only.

Defendant was arrested on January 17, 2023, at his home in the Central District of California. At the time of his arrest, a search warrant was executed. He first appeared for a detention hearing on January 18, 2023. At that time, counsel requested, and the court granted, a continuance of the detention hearing to January 20, 2023.

The Pretrial Release Order

At the conclusion of the hearing, the magistrate judge ordered defendant released on various conditions. The court found that there existed a combination of conditions that could reasonably assure the defendant's presence at trial and the safety of the community and ordered defendant's release on the following conditions:

a. Bond in the sum of $ 250,000 in the form of justified affidavit of surety signed by defendant's parents with full deeding of property.

b. General Conditions of release as set forth in the Central District's Bond Form (See Government's Exhibit 1, page 5 of 6);

c. Pretrial Supervision as directed by Pretrial Services;

d. Surrender all passports to Pretrial Services or sign a declaration with the clerk that he possesses no passport; do not apply for the issuance of a passport during the pendency of this case;

e. Travel restricted to the Central District of California and the Southern District of Florida;

f. Reside as approved by Pretrial Services;

g. Seek or maintain employment as approved by Pretrial Services and submit proof of the same to Pretrial Services;

h. Do not possess firearms, ammunition, destructive devices, or dangerous weapons and submit to search of person or property to assure compliance with this condition;

i. Do not use or possess any means of identification other than in defendant's true name and submit to search of person or property to assure compliance with this condition;

j. Do not use or possess illegal drugs or state authorized marijuana and submit to search of person or property to assure compliance with this condition;

k. Possess and use only those digital devices, email accounts, etc. that are disclosed to Pretrial Services and disclose any new digital device, account, passwords etc. and submit to search of person or property to assure compliance with this condition;

l. Do not use or possess more than one virtual currency wallet or account without prior approval of Pretrial Services. Do not open a virtual currency wallet or account without prior approval from Pretrial Services. In order to assure compliance with this condition, submit to search of person or property.

m. Ordered to comply with all protective orders issued by any court of competent jurisdiction.

The magistrate judge stayed the release order to permit the government to seek the instant review.

A transcript of proceedings before Magistrate Judge McCormick is attached hereto as Defendant's Exhibit A. Furthermore, a copy of the minute order setting forth

4

the full text of conditions of bond is part of the government's submission and marked there as Exhibit 1.

This court conducts an independent review of the case. *U.S. v. Hurtado*, 779 F.2d 1467 (11th Cir. 1985); *U.S. v. King*, 849 F2d 485 (11th Cir. 1988).

### 2. DEFENDANT IS ENTITLED TO BE RELEASED PENDING TRIAL BECAUSE ANY PRESUMPTION APPLICABLE TO HIM HAS BEEN REBUTTED AND THE GOVERNMENT HAS NOT MET ITS BURDEN UNDER THE BAIL REFORM ACT OF 1984

Federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail. *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951); *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972).

In deciding whether a defendant must be detained, courts are guided by the principle that "liberty is the norm, and detention prior to trial or without trial is a carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 94 L.Ed.2d 697 (1987). Or, as stated in *U.S. v. Stone*, 608 F.3d 939, 945 (6th Cir., 2010), "The default position of the law...is that a defendant should be released pending trial." Only in rare circumstances should release be denied. *Sellers v. United States*, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968) (Black, J., in chambers); *U.S. v. Stone*, 608 F.3d 939 (6th Cir., 2010); *United States v. Schiavo*, 587 F.2d 532, 533 (1st Cir.1978); *United States v. Motamedi* 767 F.2d 1403, 1405 (9th Cir. 1985).

Release pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. §§3141, et.seq. (the "Act".) Section 3141 thereof provides that a judicial officer authorized to order the arrest of a person under 18 U.S.C. §3041 shall order such person released or detained, pending judicial proceedings.

Under the Act, a defendant may be detained pending trial only if a judicial officer

5

"finds that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community." 18 U.S.C. § 3142(e). *U.S. v. Salerno, supra.*

The overarching principle of the statutory scheme is that the Act requires the release of a person facing trial under the least restrictive conditions or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *United States v. Price*, 773 F.2d 1526 (11th Cir. 1985); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), cited with approval in *U.S. v. Stone, supra.*

In making its determination of whether to release or detain a defendant, the court is guided by the factors set forth in 18 U.S.C. § 3142(g). That subsection reads as follows:

> Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) [18 USCS §2332b(g)(5)(B)] for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

6

proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Moreover, "[t]he determination of pretrial release under §3142 neither requires nor permits a pretrial determination of guilt." *Stone* at 948. In this regard, the government's arguments in its motion veer in the wrong direction by spending a considerable amount of its submission attempting to litigate the issue of guilt in a proceeding that is specifically forbidden from making a guilt or innocence determination.

## The Rebuttable Presumption

Where there is probable cause to believe that the defendant has committed an offense for which the maximum term of imprisonment is ten years or more is prescribed under 21 U.S.C. §§801, et.seq., the Act requires that the court commence its inquiry with regard to the propriety of detention with a rebuttable presumption that no combination of conditions will reasonable assure the appearance of the defendant or the safety of the community. 18 U.S.C. §3142(e); *U.S. v. Quartermaine*, 913 F.2d 910 (11th Cir. 1990); *U.S. v. King, supra* at 489; *U.S. v. Stone, supra* at 945. The return of an indictment by a grand jury is sufficient to establish the existence of probable cause for the purpose of triggering the presumptions in § 3142(e). *U.S. v. Quartermaine, supra* at 915; *U.S. v. Hurtado, supra.*

### The Defendant Has Rebutted the Presumption with Respect to Both the Likelihood of Flight and Safety to the Community.

The statutory presumption merely works to shift the burden of production of evidence to the defendant. *King*, 849 F.2d at 488; *Hurtado*, 779 F.2d at 1478; *U.S. v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985). The ultimate burden of persuasion remains on the government...and the burden placed on the defendant to rebut the presumption is *small*. The defendant need only produce some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption. *U.S. v. Quartermaine*, 913 F2d 910 (11th Cir. 1990); *U.S. v. Stone*, 948 F.3d at 948; *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir.1991); *U.S. v. Chen*, *supra*.

Defendant has come forth with substantial evidence which easily meets the small burden required to rebut it.

His evidence clearly offers assurances to the court both in terms of likelihood of flight and safety to the community. Defendant is a United States citizen who has lived in California all of his 24 years. He is a loving and dedicated father and son. He has resided in Southern California with his fiancé and 1½ year old son for the last 2 years. Mr. Orgil has no substance abuse history.

For approximately 10 years, defendant has worked in the Buddhist community as a volunteer at the Nechung Buddhist Center in Richmond, California. His community work has earned him substantial respect and admiration and he is an esteemed member of his temple.

Mr. Orgil's 1½ year old, Zaya Orgil, suffered from hypoxia – a lack of oxygen that affected his brain. He was hospitalized at Oakland Children's Hospital for a full week and is in need of constant monitoring. As a father, Mr. Orgil is attentive to his son's

medical needs and his presence is essential to the child's well being.

Quite significantly, his parents, both longtime residents of Northern California have agreed to act as sureties and have agreed to pledge their home as security to the full extent of the equity, estimated at over $800,000.

Notably, there is no history of failures to appear in court and no evidence of failure to follow court orders.

Mr. Orgil has traveled abroad for pleasure, a factor that is true of millions of people and can easily be addressed with appropriate restrictive conditions of release.

The fact is that Mr. Orgil's immediate family-- mother, father, and siblings -- are all in the United States and are all U.S. citizens. The fact that he may have relatives in Mongolia simply makes him one of millions of Americans who have descended from other places in the world. Contrary to other Americans, Mr. Orgil cannot simply walk across a border to reach a destination. Thus, travel is hardly an indicator of likelihood of flight, and, as noted is easily controlled with appropriate conditions.

Finally, while it is true that, as charged, Mr. Orgil faces the possibility of a mandatory minimum 10-year sentence, he is also eligible for the "safety valve" provisions of 18 U.S.C. § 3553(f) which would remove the sentencing floor imposed by statute. 18 U.S.C. § 3553(f)(1); *U.S. v. Garcon*, 54 F.4th 174 (11th Cir. 2022); *U.S. v. Lopez*, 998 F.3d 431 (9th Cir. 2021).

Defendant has no prior history of criminal convictions. He has not intimidated any witnesses. Thus, the defendant's burden of production is easily satisfied by his lack of criminal history and evidence of good character. See *U.S. v. Stone, supra* ("Each defendant has satisfied his burden of producing some evidence tending to demonstrate that he is not dangerous"... by producing "favorable information about each defendant's character and criminal history.") *Id.* at 947.

In *United States v. Dominguez*, 783 F.2d 702 (7th Cir.1986), cited with approval in the Eleventh Circuit and other circuits as well, the court addressed the issue of dangerousness in the context of a narcotics trafficking indictment where the defendant is saddled with the rebuttable presumption that he is a danger to the community. There, defendants were indicted on cocaine trafficking charges in Indiana, but arrested in Florida. The magistrate judge in Florida set bail, but the district court in Indiana revoked the order and entered an order detaining the defendant. After confirming that the district court had authority to order the defendant detained, the court held that the sole fact that defendant had been charged with narcotics trafficking was not sufficient to conclude that he was a danger to the community, and remanded the matter to the district court.

The *Dominguez* court explained further:

> A defendant cannot be detained as dangerous under section 3142(e), even if the presumption is not rebutted, unless a finding is made that no release conditions, will reasonably assure...the safety of the community.... That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct.... Any evidence favorable to a defendant that comes within a category listed in section 3142(g) can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in section 3142(g)(3). *Id.*, at page 707, (Italics added).

Further operating in favor of a finding of the rebuttal of the presumption is the notion that the original Congressional intent in creating it dealt with those defendants who are found to be dealing drugs imported and/or domestically manufactured where the propensity to violence was great and the offenders had created ties outside the United States from "whence most dangerous drugs are imported into the country." See

10

*U.S. v. Jessup,* 757 F.2d at 385. Here, by contrast, the offense with which Mr. Orgil is charged, found by the grand jury to come within the ambit of 21 U.S.C. §841, does not fit the Congressional model. As the *Jessup* court noted:

> The less those features resemble the congressional paradigm, the less weight the magistrate [or, in this case, the district court on review] will likely give to Congress' concern for flight. The individual characteristics of a case and the precise weight too be given to the presumption are matters for [judge] to take into account within the framework of factors set out in 3142(g). In order words, [defendant's] argument goes not to the applicability of the presumption but rather to the weight that should properly be accorded it. *Id.* at page 387.

The crux of the allegations against Mr. Orgil stem from his alleged sale of narcotics over the internet. None of the allegations involve any face to face encounters with potential buyers or suppliers. Thus, this case presents features that do not resemble the congressional paradigm and thus less weight must be given to the operation of the presumption.

The government cannot offer this court any evidence, let alone clear and convincing evidence, of the defendant's threat to the community.

Thus, the defendant has met the requisite burden in overcoming the presumption.

### The Government's Burden of Persuasion

In attempting to persuade this court that there are no conditions of release that will reasonably assure defendant's presence at trial and the safety of the community, the government is faced with two different standards of proof.

Under the Act, a finding that a person presents a danger to the community that cannot be reduced by a combination of conditions must be supported by clear and convincing evidence. 18 U.S.C. §3142(f).

11

However, the statute is silent as to the burden of proof with respect to flight risk. Courts are unanimous in concluding that the Government's burden with respect to risk of flight is that of the preponderance of the evidence. Elucidating on the government's burden of clear preponderance of the evidence, *U.S. v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985), cited approvingly in the Eleventh Circuit, as well as other circuits, held that the "preponderance of the evidence" standard in pretrial detention matters is more than the usual "tips the scales slightly" test applied to civil cases. To give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule applying a "clear preponderance" test.

Although the government carries the burden of persuasion, in its motion, it fails to address how the conditions of release that the magistrate imposed are inadequate. The fact is that the magistrate in this case found that such conditions existed based upon virtually the same factual presentation as is made by the government in this proceeding.

Instead, the government spent most of its efforts on setting forth the fruits of its investigations and, in essence, attempting to litigate defendant's guilt. As will be discussed below, the government's focus is misguided in its purpose and the purported evidence falls woefully short of its desired objective.

18 U.S.C. §3142(g) requires that the court look to the available information to determine whether there are conditions that will reasonably assure the statute's concerns of nonappearance and safety to the community. It also lists several factors that the court should consider in reaching its determination. A review of those factors demonstrates that defendant should be released pending trial on conditions as set forth by the magistrate, or as set forth by this court.

1. <u>The Nature of the Offense</u>

The indictment charges violation of the Controlled Substances Act. Unlike the

run-of-the-mill narcotics distribution case, the entire basis for this prosecution is the alleged sales of narcotics over the internet on the "dark web." The case presents legitimate issues of identity of the perpetrator, the responsibility for the purity of the methamphetamine that was allegedly sold, the traceability of cryptocurrency to drug transactions and how the attributes of cryptocurrency or other digital assets fit into the money laundering paradigm.

Moreover, as noted above, the nature of the allegations in this case demonstrates a reduced potential for violence that is generally present in most drug cases.

In essence, in ruling on pretrial detention, the court must carefully distinguish this case from the garden variety CSA violations that come regularly before it.

2. Weight of The Evidence

Some circuits have ruled that this factor is the least important based on the principle that predetermination of guilt is proscribed in a detention hearing. See, e.g., *U.S. v. Gebro,* 948 F.2d 1118, 1121 (9th Cir. 1991), cited approvingly on other grounds in *U.S. v. Stone, supra,* and various unpublished district court opinions in Florida.[2]

Moreover, "this factor primarily concerns the weight of the evidence of dangerousness or risk flight, and not necessarily, the weight of the evidence of the defendant's guilt...." *U.S. v. Ingram,* 415 F. Supp.3d 1072 (N.D. Fla. 2019), citing the Sixth Circuit opinion in *U.S. v. Stone, supra.*

Nonetheless, the weight of the evidence in this case, as presented in the motion, lacks essential foundational elements and is speculative in many respects. These attributes render the facts as presented far less reliable and should thus be accorded

---

2 See, e.g., *United States v. Holden,* No. 04-80112-CR, 2004 WL 7331459, (S.D. Fla. Oct. 4, 2004), and others.

little weight. This presentation by the government is based on conclusory statements without evidentiary support.

Of particular significance is the obvious question of how Mr. Orgil is identified as the individual behind the various digital locations used to distribute drugs, or for that matter, as the. Thus, the motion states, without detailing the source, that this defendant used various specified vendor monikers to distribute narcotics. The evidence as stated in the motion in attempting to tie defendant to these monikers cannot be afforded much weight in terms of defining defendant's perceived "dangerousness" or his tendency to flee. The identity of the individual or individuals that actually distributed drugs is a major issue in the case and weighs heavily in favor of pretrial release on appropriate conditions.

Furthermore, the indictment in this case charges defendant with conspiracy and possession with intent to distribute drugs, and not, with the manufacture of controlled substances. Yet, the government baldly asserts – without offering a scintilla of support – that he "obtains the chemicals used to manufacture some of the narcotics from suppliers located in China." Government's motion, page 3. Also characterized by lack of evidentiary underpinnings are the assertions related to the "analysis" of cryptocurrency wallets where it is averred that this defendant received over $3 million.

The government's allegation that defendant traveled "extensively using private jets to further drug trafficking," Government's motion, page 3, is a shining example of its groundless claims. No part of that statement can be shown to be true.

These unsupported assertions are simply an attempt to throw in as many speculative facts as possible in order to make use of the rule in this proceeding that it may be conducted by proffer without regard to the Rules of Evidence. However, it is clear that the court may not give weight to unsubstantiated proffers.

14

The government essentially asks the court to accept its expert conclusions about all the facts, including its photographs, pertaining to purported drug laboratories, drug precursors, the manufacturing of drugs, and other facts absent the required foundational support to be credible.

Because this factor is used to assess dangerousness or flight risk, it may not be used, as shown, to conclude that pretrial release conditions are not available. Quite the contrary. The relatively low weight that must be accorded the facts presented require conditional pretrial release.

3. History and Characteristics of the Defendant

Defendant's history and characteristics are discussed above and need not be repeated for the court. Suffice it to say that an analysis of this factor amply demonstrates that the government cannot meet its burden to establish that he is a flight risk or a danger to his community. In fact, all of the evidence establishes the opposite, save for the unsupported allegations in this case.

It is important to note that the government alleges that defendant was traveling on private jets. The government offers no proof of this fact, and for a simple reason. It is simply not true.

It is true that defendant is presently charged in the California Superior Court with robbery. The facts in the case are that defendant was in an altercation that resulted in the alleged victim complaining that money was taken from him. No firearm or any other weapon was used. Notably, the weakness of the prosecution's case is such that it has agreed to a probationary term. Because of the risks associated with any trial, defendant has pleaded guilty to the count. No judgment of conviction has been entered since no sentence has been imposed.

The government points to two sets of false identifications that were found at

defendant's home during the execution of the search warrant. In this regard, it should be noted that the two California driver's licenses are identical and are issued under the same name. Furthermore, they were issued in 2018, when defendant was only 19 years old. It is obvious that these driver's licenses were obtained for the purpose of permitting the purchase of alcoholic beverages when defendant was younger. There is no evidence that he has ever used the identification cards, had them on his person, or were created for any other nefarious purpose. The same is true for the Washington State identification cards.

If released, defendant would reside in Southern California and abide by all conditions of pretrial release.

4. <u>The Nature And Seriousness Of The Danger To Any Person Or The Community That Would Be Posed By The Person's Release.</u>

As previously seen, the very wording of the statute requires that the Government prove by clear and convincing evidence that the defendant pose a danger to the community.

In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 94 L.Ed.2d 697 (1987), the court further defined the statutory standard thus:

> When the government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat. 481 U.S. at 748-751, 107 S.Ct. at 2102-03 (Emphasis added).

In *United States v. Ailemen*, 165 F.R.D. 571 (N.D. Cal. 1996), the defendant was indicted on 39 drug related counts that included distribution of heroin, continuing criminal enterprise, use of telephone to facilitate drug transactions, and money

16

laundering. Wiretaps intercepted over 10,000 telephone conversations.

In granting pretrial release, the court, analyzing the threat to the community prong that justifies pretrial detention, correctly pointed out that "the proper focus is not on how big that threat to the community would be if defendant were released on no conditions, but, instead, the focus should be...how big that threat would be if the defendant were released on stringent conditions aimed at reducing as much as possible the likelihood of harm...."

When viewed in the context of a defendant with extensive family and community ties, no affiliation with organized crime, who has made no threats to witnesses, informants, or police officers, no identifiable and articulable basis can be established which would permit the government to meet its burden of proof by clear and convincing evidence.

The government makes much of a firearm found at defendant's home. It should be noted possession of a handgun is not a crime of violence, even when a person is prohibited from possessing a firearm. Many circuit courts have discussed the nature of the felon-in-possession offense and the substantiality of the risk. The majority of these courts have determined that a § 922(g)(1) offense does not satisfy these elements. *United States v. Ingle*, 454 F.3d 1082, 1085–86 (10th Cir. 2006), citing *United States v. Bowers*, 432 F.3d 518, 524 (3d Cir.2005); *United States v. Johnson*, 399 F.3d 1297, 1302 (11th Cir.2005) (per curiam); *United States v Twine*, 344 F.3d 987, 987–88 (9th Cir.2003) (per curiam); *United States v. Singleton*, 182 F.3d 7, 16 (D.C.Cir.1999).

The facts here are much more lenient in that respect, for defendant is not a

prohibited person. Therefore, the mere possession of a firearm – especially where no drugs were found near the firearm, or the firearm is not alleged, nor shown, to be possessed in relation to the alleged drug offense – does not create a substantial risk of harm to anyone and this fact may not prevent the court from otherwise finding that pretrial release is appropriate on reasonable conditions. *Ingle, supra.*

In summary, the Government has not carried its burden to demonstrate that no condition or combination of conditions can reasonably assure the safety of the community or the defendant's appearance at trial.

### 3. A COMBINATION OF CONDITIONS CAN ASSURE THE DEFENDANT'S PRESENCE AND THE SAFETY OF THE COMMUNITY

Defendant submits that the conditions set by the magistrate judge, particularly, the conditions related to supervision and search and seizure related to all of his activities, can meet the statute's requirements to ensure that he will appear at all court proceedings and prevent any harm to the community.

Of course, this court may find other conditions are necessary, including a higher bond amount secured by the parents, and, if required, electronic monitoring or tethering.

### 4. CONCLUSION

In view of the Government's failure to meet its burden of persuasion pertaining to either prong of the inquiry, viz., that defendant is a flight risk and/or a threat to the safety of the community, and that a combination of conditions exists that will reasonably assure the court that the defendant does not pose a threat to the community

and will appear for trial, the defendant is entitled to be released as a matter of law, and the defendant requests that he be released upon such combination of conditions as the court may deem reasonable, just and proper.

Respectfully submitted,

THE SEVERO LAW FIRM

By _____

Michael V. Severo (CA SBN: 072599)
Attorney for Defendant TENZIN ORGIL
THE SEVERO LAW FIRM
301 N. Lake Avenue, Suite 315
Pasadena, CA 91101
Ph: (626) 844-6400
Fax: (626) 844-6446
msevero@mvslaw.com

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Crim. Pro. 49(b)(1), I hereby certify that on January 25, 2023, the foregoing **DEFENDANT TENZIN ORGIL'S OPPOSITION TO GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER** was sent to the Clerk of the Court via Federal Express.

A service copy of the foregoing **DEFENDANT TENZIN ORGIL'S OPPOSITION TO GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER** was sent via electronic mail to the following parties:

Assistant U.S. Attorney Monique Botero
11200 NW 20 Street, Suite 101
Miami, FL 33172
Monique.botero@usdoj.gov

Assistant U.S. Attorney Nicole Grosnoff
99 N.E. 4th Street
Miami, FL 33131
Nicole.s.grosnoff@usdoj.gov

Date: February 4, 2023

Michael V. Severo, Esq. (CA SBN 72599)
THE SEVERO LAW FIRM
301 N. Lake Avenue, Suite 315
Pasadena, CA 91101
Ph: (626) 844-6400
Fax: (626) 844-6446
msevero@mvslaw.com
Counsel *Pro Hac Vice* for Defendant Tenzin Orgil