# EXHIBIT A

1

```
1              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
2              SOUTHERN DIVISION - SANTA ANA

3

4   UNITED STATES OF AMERICA,  )   Case No. 8:23-MJ-0041
                               )
5         Plaintiff,           )   Santa Ana, California
                               )   Friday, January 20, 2023
6             v.               )   2:08 P.M. to 2:12 P.M.
                               )   2:33 P.M. to 3:00 P.M.
7   TENZIN ORGIL,              )
                               )
8         Defendant.           )
    _____)

9

10

11

12              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
13          UNITED STATES MAGISTRATE JUDGE

14

15  Appearances:              See Page 2

16  Deputy Clerk:             Nancy Boehme

17  Court Reporter:           Recorded; CourtSmart

18  Transcription Service:    JAMS Certified Transcription
                              16000 Ventura Boulevard #1010
19                            Encino, California  91436
                              (661) 609-4528
20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

2

```
1   APPEARANCES:

2

3   For the Plaintiff:      Office of the U.S. Attorney
                            By:  ANN WOLF
4                           411 West Fourth Street
                            Santa, Ana, California  92701
5                           (714) 338-3535
                            USACAC.SACriminal@usdoj.gov
6

7   For the Defendant:      The Severo Law Firm
                            By:  MICHAEL V. SEVERO
8                           301 North Lake Avenue, Suite 315
                            Pasadena, California  91101
9                           (626) 844-6400
                            msevero@mvslaw.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    SANTA ANA, CALIFORNIA, FRIDAY, JANUARY 20, 2023, 2:08 P.M.

2         (Call to Order of the Court.)

3         THE CLERK:  We're on the record on Case 8:23-MJ-

4    0041.  It's the *United States of America v. Tenzin Orgil.*

5         Counsel, your appearances, please.

6         ANN WOLF:  Good afternoon, Your Honor.  Ann Wolf

7    appearing on behalf of the Government.

8         THE COURT:  Good afternoon, Ms. Wolf.

9         MICHAEL SEVERO:  And good afternoon, Your Honor.

10   Michael Severo appearing on behalf of Mr. Orgil.  He is

11   present in custody.

12        THE COURT:  Good afternoon, Mr. Severo.

13        Good afternoon, Mr. Orgil.

14        Let me ask our Pretrial Services officer to

15   introduce herself.

16        DALAYNA ECKLUND:  Good afternoon, Your Honor.

17   Dalayna Ecklund from United States Pretrial Services.

18        THE COURT:  Thank you, Officer Ecklund.

19        Mr. Orgil, we introduced ourselves to you on

20   Tuesday or Wednesday -- whenever you were here -- but to do

21   so again, you are in a United States District Court for the

22   Central District of California.  You are here because you are

23   charged with a criminal offense against the United States.

24   Those charges arise out of the district -- the Southern

25   District of Florida.

4

1              Mr. Severo has reviewed with you a document called

2      an "Advisement of" your "Statutory and Constitutional

3      Rights."  It's a two-page document.  I'm holding that up.  On

4      the second page, there's a signature about halfway down the

5      page.

6              Is that your signature, sir?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Did you sign this document after you

9      reviewed it with Mr. Severo's help?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  I'm not going to review

12     your rights again with you, but as you know, you have the

13     right to counsel.  You've told me that you've designated --

14     or retained Mr. Severo as your counsel in connection with

15     this matter; is that correct?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  All right.  Let's next talk about why

18     you're here.  You're here because there was an arrest warrant

19     issued back in, as I indicated, the Southern District of

20     Florida.  That arrest warrant is based upon the return of an

21     indictment by the grand jury there.  I'm holding that up.

22     Did you and Mr. Severo get a chance to look at the Indictment

23     before we got started?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  I'm not asking you right now to admit

1  or deny the truth of anything, but do you understand what the

2  grand jury in Florida alleges that you did?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  I have received from

5  Ms. Wolf a Notice of Request for Detention.

6              Ms. Wolf, what are you proffering in support of the

7  detention request?

8              MS. WOLF:  Thank you, Your Honor.

9              The Government proffers the Indictment, the arrest

10  warrant, and both of the Pretrial Services Reports and their

11  recommendation of detention.

12             THE COURT:  Let me ask you: Are you also proffering

13  the search warrant affidavit that I read earlier this week?

14             MS. WOLF:  Yes, Your Honor.  Actually, that would

15  -- yes.  Thank you.

16             THE COURT:  It's hard for me to forget what I've

17  read.

18             Have you given a copy of that -- or does Mr. Severo

19  have a copy of that?

20             MR. SEVERO:  I do not.

21             THE COURT:  Okay.  We need to get him a copy of

22  that, please, Ms. Wolf.

23             MS. WOLF:  Okay.  Thank you, Your Honor.

24             (Pause.)

25             THE COURT:  If you don't have it here, we can take

6

1    five minutes.

2           MS. WOLF:  I do need to take five minutes.  I don't

3    have it with me.

4           THE COURT:  Okay.  We'll take five minutes so you

5    can get a copy of the search warrant affidavit and give that

6    to Mr. Severo so he's on a level playing field with you and I

7    and we're all on the same spot.

8           MS. WOLF:  Thank you, Your Honor.

9           THE COURT:  All right.

10          Ms. Boehme?

11          THE CLERK:  This court is now in recess.

12       (Recess from 2:12 p.m. to 2:33 p.m.)

13

14                          AFTER RECESS

15          THE CLERK:  We're back on the record on Case

16   8:23-MJ-0041.

17          THE COURT:  All right.  Mr. Severo, you've received

18   a copy of the search warrant affidavit?

19          MR. SEVERO:  I have received a copy of this 30-page

20   search warrant --

21          THE COURT:  Well, sometimes they're longer than

22   that.  Let me tell you.

23          MR. SEVERO:  Oh, I know.

24          THE COURT:  You've received a copy of that?  You

25   had a chance to look at it?

7

1          MR. SEVERO:  I've had a chance to review it

2   briefly, yes.

3          THE COURT:  Okay.

4          Ms. Wolf, anything else that you are proffering in

5   support of the Government's request for detention other than

6   the Pretrial Services Reports and their recommendation of

7   detention, the Indictment from Florida, and the search

8   warrant affidavit?

9          MS. WOLF:  No, Your Honor.

10          THE COURT:  All right.  Mr. Severo, would you like

11   to be heard on the issue of detention?

12          MR. SEVERO:  Yes, Your Honor.

13          THE COURT:  Please.

14          MR. SEVERO:  Thank you.

15          As the Court is well aware, we have a presumption

16   case, but I think that the evidence in this case easily

17   rebuts that.  As the Court is aware, the burden is small as

18   far as rebutting the presumption under *United States v. Chen*

19   and other cases.

20          The -- Mr. Orgil is a U.S. citizen, was born here.

21   He has a substantial backing of his parents for bail resource

22   and has no substance abuse history.  Certainly, the charges

23   are serious, but, frankly, I don't -- we don't really accept

24   the tender in that -- and search warrant affidavit is filled

25   with a great deal of, should I say, speculation and some

8

1   amount of exculpation that doesn't really add up to anything

2   for purposes of this hearing.

3          I'm a bit flummoxed, if you will, for -- by

4   Pretrial Services indications of the risk of nonappearance

5   because it talks about a passport, and we know there is a

6   passport.  We don't -- we haven't located it, but there is

7   any condition for that, and that is turn it in.  The foreign

8   travel history -- I think most of us would fall prey to that

9   if we -- if that were to be a source of concern.  Mr. Orgil

10  did travel outside the United States for pleasure a couple

11  years ago.  He went to Vietnam and Singapore and came back.

12         So the -- here's the real issue: There are no --

13  there is no history of failures to appear or failures to obey

14  specific court orders, and I think that's where the -- we

15  need to focus in terms of whether there is a combination of

16  conditions that could be put together to relieve some of the

17  concerns of nonappearance and danger.

18         I -- there are a number of things that are set

19  forth in the Pretrial Services Report that are not shown to

20  have been correct, like an alleged search for how to cut off

21  an ankle monitor.  I'm not sure how that plays into any of

22  this.  Possible mental health concerns -- I think there's a

23  discussion with his mom about him being on the autism

24  overview or -- but there's no diagnosis to that effect, and I

25  don't know that that cannot -- that that plays into a -- I do

9

1  know.  It does not play into any ability of the Court to

2  impose conditions that will assure nonappearance and relieve

3  or reduce any perceived danger to the community.

4        I -- there are -- Mr. Orgil has suffered no

5  criminal convictions.  He's got a case pending up north as a

6  result of some allegation of robbery, but I will tell the

7  Court that I have spoken with counsel on that case, and the

8  People are not pursuing state prison or any such type of

9  punishment because it is felt that there -- the evidence is

10 not sufficiently strong, and I realize that I say that

11 without any backing, but I do need to inform the Court that I

12 did have that conversation with counsel.

13       So are there -- is there a combination of

14 conditions?  Sure.  Turn in your passport.  His parents are

15 putting up $880,000 worth of equity, which is everything in

16 that home.  There is nothing in this report or anything in

17 his character that would have the Court assume or conclude

18 that Mr. Orgil would leave his mom -- his mother and father

19 without a home by fleeing or by breaching any conditions of

20 bond.  So I think that is a major consideration in this case.

21       He is -- while he has traveled outside the

22 United States, he has never stayed more than a few days

23 outside the United States and although -- in his mind, he has

24 no -- no one outside the United States that he would go to.

25 He -- his family is originally from Mongolia.  He has never

1   -- he traveled to Mongolia when he was seven but he -- there

2   is presumably a grandmother somewhere in Mongolia, but he

3   doesn't remember her or knows her.

4            So it is really a stretch to say that he's got a

5   place to go or that he would leave his 1 1/2-year-old son

6   behind to escape when in fact the allegations in this case --

7   so the -- at least as far as I can determine from both the

8   Indictment and the search warrant affidavit, are that he was

9   trafficking, allegedly, on the dark web and at the -- there

10  is a real question of identification of the individual who

11  was behind the trafficking that the officers are talking

12  about in this case.  So it's not an -- a case where there has

13  been a hand-to-hand sale.  There's been no real -- there's no

14  evidence that would suggest that Mr. Orgil would not face the

15  prosecution in this case and attempt to resolve this case in

16  the Southern District of Florida.

17           The Government -- the -- Pretrial Services doesn't

18  give us any set of conditions because it says it doesn't have

19  any, but I suggest to the Court that the usual conditions of

20  bond -- travel conditions, firearm conditions, conditions

21  related to search and seizure, conditions related to

22  surrender of a passport -- are -- along with the posting of a

23  substantial bond by his -- as testified by his parents' home

24  more than amply give the Court the comfort of appearance and

25  reduced danger.

1          THE COURT:  All right.  Mr. Severo, thank you.

2          Ms. Wolf, would you like to be heard?

3          MS. WOLF:  Yes.  Thank you, Your Honor.

4          Your Honor, the defendant was already released on

5    bond and subject to electronic monitoring, and while on bond,

6    not only did he engage in the activity that is charged in the

7    Indictment and the activity that is set forth in the

8    affidavit, but in addition to that, he researched how to

9    disable and cut off his monitoring device, how to delete his

10   maps history, and in addition to that, when his residence was

11   searched, they found -- again, contrary to bond conditions --

12   a loaded firearm --

13         THE COURT:  Was that a bond condition?  I don't --

14         MS. WOLF:  I have --

15         THE COURT:  I don't know that I know that.

16         MS. WOLF:  Well, according to the mother, in the

17   Pretrial Services Report, it is a bond condition, so she

18   states, and those are generally bond conditions.  I do not

19   know for a fact, Your Honor, about that.

20         THE COURT:  I don't know either.  Okay.

21         MS. WOLF:  In addition to that, there were bullets

22   and two cases, but the firearms for those bullets and those

23   cases were not found.  In addition to that, they found -- and

24   this we definitely have evidence of -- high-quality

25   identification documents with the defendant's picture but

1    other names and other addresses.  So he, clearly, has the

2    wherewithal to assume a different identity.

3             THE COURT:  Do you have something to show me with

4    respect to that?  All I have is a single line in the

5    Pretrial Services Report.

6             MS. WOLF:  I do, Your Honor.

7             THE COURT:  All right.  Why don't you give that to

8    Mr. --

9             MS. WOLF:  And I have provided this to counsel.

10            THE COURT:  -- Mr. Severo, please.  Thank you.

11            And not to --

12            (Pause.)

13            MS. WOLF:  And in addition, Your Honor, I believe

14   that the defendant's statements about his foreign travel

15   history, as well as his ties to Pretrial Services, were

16   misleading and inaccurate, at best, in terms of how recently

17   he had gone and the ties that he has since he definitely does

18   have a grandmother and an aunt, according to his mother.

19            In addition, in terms of danger, again, we have

20   firearms, but, also, we have individuals -- he is subject to

21   two active protection orders; as I already mentioned, he was

22   on bond for a robbery case; and in addition to that,

23   Costa Mesa Police Department, when he was arrested on these

24   charges, arrested his wife -- or girlfriend because the two

25   of them allegedly pepper-sprayed another couple and they --

1    it's my understanding there is, also, an arrest warrant for

2    the defendant as well on that case.

3             THE COURT:  Well, is there an arrest warrant?  I

4    mean, there does not seem to be in the Pretrial Services

5    Report any indication that there's charges filed.  What's the

6    status of that?

7             MS. WOLF:  As far as I -- that is all that I know

8    is that at the time that he -- that she was arrested on those

9    charges at the time that he was arrested and that they are

10   both being charged.  That's my understanding.

11            THE COURT:  Okay.  All right.

12            MS. WOLF:  That's all I have.  Thank you,

13   Your Honor.

14            THE COURT:  Uh-huh.

15            Mr. Severo?

16            MR. SEVERO:  If I may for a moment.

17            THE COURT:  Huh?

18            MR. SEVERO:  Okay?

19            THE COURT:  Oh, yeah.

20            MR. SEVERO:  I don't know any case where we don't

21   come to this court with some evidence of somebody having done

22   something that is of concern to the community and the safety

23   of the community.  But that's not the question before the

24   Court.  Is there a combination of conditions that can --

25            THE COURT:  Reasonably assure that --

1        MR. SEVERO:   -- that assure appearance and reduce

2   any perceived danger?  And I think that that's the focus.   I

3   did not hear -- I have not seen, from my standpoint, any

4   indication that Mr. Orgil is -- has any warrants outstanding

5   for anything and that -- or that the Court cannot fashion a

6   set of conditions that will assure appearance and -- or

7   reduce any perceived danger.

8        THE COURT:  All right.  In a moment, Mr. Orgil, I'm

9   going to set terms and conditions of release.  Those are

10  going to include a condition that you secure your bond with

11  an affidavit with justification, and so we can't do that

12  today, and I do think that's necessary before you can be

13  released.

14        So I'm going to order you released upon a posting

15  of an appearance bond in the amount of $250,000.  That

16  appearance bond will be secured by an affidavit with

17  justification of surety signed by your parents, and that will

18  require a full deeding of property.

19        In addition to the General Conditions of Release,

20  I'm going to order the following additional conditions of

21  release:

22        You're going to be placed on United States

23  Probation and Pretrial Services supervision.

24        You're ordered to surrender all passports and

25  travel documents to United States Probation and

1   Pretrial Services within 48 hours of your release, sign a

2   declaration regarding passport and other travel documents,

3   and not ordered not to apply for a passport or other travel

4   document during the pendency of this case.

5          Your travel will be restricted to the Central

6   District of California and the Southern District of Florida

7   unless prior permission is granted by United States Probation

8   and Pretrial to travel to a specific other location.  Court

9   permission is required for any international travel.

10         You're ordered to reside as approved by

11  Pretrial Services and not locate [sic] without prior

12  permission from Pretrial Services and Probation.

13         And you're to maintain or actively seek employment

14  unless excused by Probation and Pretrial for schooling,

15  training, or other reasons approved by Probation and

16  Pretrial.  Verification must be provided to Probation and

17  Pretrial, and employment must be approved by Probation and

18  Pretrial.

19         I'm ordering you not to possess any firearms,

20  ammunition, destructive devices, or other dangerous weapons.

21         I'm also ordering you not to use or possess any

22  identification, mail matter, access device -- and that

23  includes, but is not limited to, credit and debit cards -- or

24  any identification-related material other than in your own

25  legal or true name without prior permission from

1   Pretrial Services and Probation.  In order to determine

2   compliance with this provision and the firearm provision, you

3   agree to submit to a search of your person and/or property by

4   United States Probation and Pretrial Services, which may be

5   in conjunction with law enforcement.

6            Officer Ecklund, have I missed any conditions that

7   Probation and Pretrial would propose?

8            OFFICER ECKLUND:  Can you give me one moment,

9   Your Honor?

10           THE COURT:  Yes.

11           And same question for you, Ms. Wolf.

12           (Pause.)

13           OFFICER ECKLUND:  Your Honor, Pretrial Services

14   would recommend location monitoring, and we would, also,

15   recommend that the defendant have no contact -- or abide by

16   all protection orders.

17           THE COURT:  Okay.  I will order him to abide by all

18   protection orders.

19           I don't think location monitoring is appropriate.

20           Ms. Wolf?

21           I guess "necessary" is the right word.

22           MS. WOLF:  Your Honor, I -- the Government would

23   recommend that he, also, be restricted in terms of his use of

24   digital devices and that they, also, be subject to

25   monitoring, as well as any use of virtual currency.

1          THE COURT:  Okay.

2          I will additionally order, Mr. Orgil, that you

3   possess and use only those digital devices, screen usernames,

4   email accounts, social media accounts, messaging

5   applications, and cloud storage accounts, as well as any

6   passwords or passcodes for all such digital devices and

7   accounts, that you disclose to the United States Probation

8   and Pretrial on commencement of your supervision.  You must

9   disclose any new devices, accounts, applications, passwords,

10  or passcodes to Pretrial and Probation prior to your -- prior

11  to first use.  A digital device is any electronic system or

12  device that can access, view, obtain, store, or transmit

13  digital data.  All digital devices will be subject to

14  monitoring by United States Probation and Pretrial, and you

15  must comply with the rules and regulations of the computer

16  monitoring program and must pay the cost of the computer

17  monitoring program.

18          Additionally, I'm ordering you not to use or

19  possess more than one virtual currency wallet or account, and

20  that one wallet or account must be used for all virtual

21  currency transactions.  I'm ordering you not to obtain or

22  open a virtual currency wallet or account without prior

23  permission from Probation and Pretrial.  You must disclose

24  all virtual currency wallets and accounts to United States

25  Probation and Pretrial when supervision starts and must make

1  them available to United States Probation and Pretrial upon

2  request.  You may use or possess only open public blockchain

3  virtual currencies and are prohibited from using private

4  blockchain virtual currencies unless prior approval is

5  obtained from United States Probation and Pretrial.

6         In order to determine compliance with this

7  provision, as well as the digital device restriction, you

8  agree to submit to a person -- a search of your person and/or

9  property, including digital devices and including computer

10 hardware and software, by United States Probation and

11 Pretrial, which may be in conjunction with law enforcement.

12         Did I get that, Ms. Wolf?

13         MS. WOLF:  Yes.  Thank you, Your Honor.

14         THE COURT:  Uh-huh.

15         All right.  Mr. Orgil, if you fail to abide by the

16 terms and conditions that I've just stated -- I know I've

17 stated a lot of them, but there's going to be a number of

18 consequences.  First, that bond that your parents are going

19 to post -- the Government will come after the bond that's

20 posted, which means they'll come after their residence.

21 Number two, my release order will be revoked, and a warrant

22 for your arrest may immediately be issued.  Third, you could

23 be charged with contempt of court, and that could result in a

24 term of imprisonment and/or a fine that would be in addition

25 to the penalties you're now facing if convicted of the

19

1   charges in Florida.

2           Do you understand the consequences that may result

3   if you fail to abide by my terms and conditions?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Officer Ecklund?  Sorry.

6           OFFICER ECKLUND:  I apologize, Your Honor.  I did

7   catch two additional conditions if you don't mind me

8   recommending?

9           THE COURT:  Go ahead.

10           OFFICER ECKLUND:  I did catch that this is a drug

11   case.  So if -- Pretrial Services would recommend the "do not

12   use or possess illegal drugs or state-authorized marijuana,"

13   along with the search condition.

14           THE COURT:  All right.  I will order -- Mr. Orgil,

15   I'll order you not to use or possess illegal drugs or state-

16   authorized marijuana.  In order to determine compliance with

17   this provision, you agree to submit to a search of your

18   person and/or property by United States Probation and

19   Pretrial, which may be in conjunction with law enforcement.

20           Do you understand that's an additional condition?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  You understand, if you fail to abide by

23   that additional condition, you may face the consequences I

24   stated earlier?

25           THE DEFENDANT:  Yes.

20

1          THE COURT:  All right.  Do you promise to abide by

2   all the terms and conditions that I've stated?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Let's talk about what's

5   going to happen next in your case.  You have a number of

6   rights that we identified in that statement of rights form

7   that we looked at, at the beginning of the hearing.  You have

8   the right to what's called "arrival of process."  That means

9   before you can be removed to the charging district that we

10  have to get the certified copies of the warrant and a warrant

11  application or copies of those documents by reliable

12  electronic means.

13         You also have the right to an identity hearing.

14  That means, if you dispute that you are the person named in

15  the warrant, you have the right to a hearing to determine

16  that you are that person before you can be removed or sent to

17  the charging district.

18         I don't believe I received from you, Mr. Severo, a

19  waiver of those rights.  Am I mistaken?

20         MR. SEVERO:  No, you're not.

21         THE COURT:  Okay.  Would you like us to set a

22  hearing for -- arrival of process is kind of -- in 2022 kind

23  of a nothing requirement --

24         MR. SEVERO:  No, no.  I --

25         THE COURT:  -- but would you like us to set an

1    identity hearing?

2           MR. SEVERO:  If -- yes.  Is it possible to do that

3    so that I have time to determine whether we're going to go

4    through with it?

5           THE COURT:  Yes.

6           And I'm going to have a question -- while you're

7    looking at your calendar, let me ask Ms. Wolf a question.

8           Would you like me to stay my release order so that

9    you can confer with your colleagues in Miami?

10          MS. WOLF:  Yes, Your Honor.  I do believe that they

11   intend to appeal.

12          THE COURT:  Okay.  So I will state a release order

13   through Tuesday -- I'll stay it for two court days, through

14   the end of business -- end of business on Tuesday.  I won't

15   sign a release order before then.  So, if they file something

16   in Florida and seek a district judge's review, they have

17   until Tuesday afternoon to do that.

18          MS. WOLF:  Thank you, Your Honor.

19          THE COURT:  Okay.

20          Let's talk about when we're going to set the

21   identity hearing.

22          MR. SEVERO:  What's the Court's pleasure on that?

23   I mean, usually --

24          THE COURT:  We can do it on Tuesday, Ms. Boehme;

25   correct?

1          THE CLERK:  Yes, Your Honor.

2          THE COURT:  We could, also, do it next Thursday if

3    that would be better for the parties.  Either is -- it's

4    really up to you, and if that's not soon enough, then I'd

5    have to think about my calendar for the following week and --

6          MR. SEVERO:  No.  I was thinking -- may I have a

7    moment?

8          THE COURT:  Uh-huh.

9          What -- Ms. Wolf, I know this may be an unfair

10   question, but who do you think you'd need for an identity

11   hearing if you needed to proceed with one?  Is the agent from

12   Florida available?

13         MS. WOLF:  I believe he has returned to Florida,

14   but that doesn't mean I can't get him back.

15         THE COURT:  Or we could have him -- we could have

16   him appear remotely.

17         MS. WOLF:  Okay.

18         MR. SEVERO:  February 1?

19         THE COURT:  February 1?

20         MR. SEVERO:  That's essentially ten days.

21         THE COURT:  Okay.

22         MR. SEVERO:  Does that work for you --

23         THE COURT:  Ms. Boehme's pointing at something on

24   our calendar.

25              (Court confers with clerk.)

23

1          THE COURT:  Wednesday, February 1st at 1:00 p.m.,

2   and we'll ask you, Mr. Severo, if you could let us know by

3   the end of next week whether you think you need that hearing

4   or not.

5          MR. SEVERO:  Yes, sir.

6          THE COURT:  And if you don't need the hearing, if

7   you'd submit the written waiver form, and I'll have to review

8   whether I need to have Mr. Orgil brought back to take that

9   waiver.  I don't remember.

10          MR. SEVERO:  I don't -- I can have him take care of

11  this, and I can hold it and see what -- I don't think we need

12  --

13          THE COURT:  Okay.  Well, but I need to talk to him

14  about it once you've done that, and I don't remember if I

15  have to do that in person or not.  Just not something that I

16  have memorized.

17          Okay.  Let's see if there's anything additional we

18  need to discuss.

19          Do we need to -- do we have a date and time for him

20  to appear in Florida, Ms. Wolf?

21          MS. WOLF:  I do not, but I will get that.

22          THE COURT:  Okay.  So you're ordered to appear

23  within 30 days in the United States District Court for the

24  Southern District of Florida unless the Government provides

25  Mr. Severo with an additional date and time.  In the

1   meantime, Mr. Orgil, you're going to be remanded to the

2   custody of the United States Marshal pending the satisfaction

3   of the conditions of release and the expiration of the

4   Court's stay order.  So you'll be with us at least,

5   minimally, through, probably, Tuesday of next week and maybe

6   a little longer depending on how long it takes your parents

7   to get together the bond paperwork.

8           Anything further, Ms. Wolf?

9           MS. WOLF:  No.  Thank you, Your Honor.

10          THE COURT:  Okay.  Under the Due Process

11  Protections Act, I do have to order you and the Government to

12  comply with your obligations under *Brady v. Maryland* and its

13  progeny and remind you, also, of the possible consequences of

14  violating that law and this order, including exclusion of

15  evidence, adverse jury instructions, dismissal of all or some

16  of the charges with or without prejudice, contempt, and

17  sanctions.

18          Ms. Boehme?

19          THE CLERK:  Do you have to set a time for -- for

20  the --

21          THE COURT:  For an expiration of the stay?

22  5:00 p.m.  Yeah.

23          All right.  Anything further, Mr. Severo?

24          MR. SEVERO:  No, Your Honor.  Thank you.

25          THE COURT:  All right.  Thank you.

25

1           THE CLERK:   This court is now adjourned.

2       (Proceedings adjourned at 3:00 p.m.)

3   ///

4   ///

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4                                CERTIFICATE

5            I certify that the foregoing is a correct

6    transcript from the electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9    /s/ Julie Messa                January 25, 2023
     Julie Messa, CET**D-403        Date
10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25